

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY EDWARD G.,<br><br>　　　　　　　　Plaintiff,<br><br>v.<br><br>MARTIN O'MALLEY, Commissioner of Social Security,<br><br>　　　　　　　　Defendant. | Case No.:  23-cv-1611-W-DDL<br><br>**REPORT AND RECOMMENDATION FOR ORDER AFFIRMING COMMISSIONER'S DECISION AND ENTERING JUDGMENT IN COMMISSIONER'S FAVOR** |

The undersigned respectfully submits this Report and Recommendation to United States District Judge Thomas J. Whelan pursuant to 28 U.S.C. § 636(b) and Civil Local Rule 72.1(d). Plaintiff Anthony Edward G. seeks judicial review of the Social Security Commissioner's denial of his application for disability benefits. *See* Dkt. No. 1. For the reasons stated below, the Court finds the Commissioner's determination that Plaintiff is not disabled is free of legal error and supported by substantial evidence, and therefore **RECOMMENDS** the Commissioner's decision be **AFFIRMED**.

/ / /

/ / /

1

23-cv-1611-W-DDL

I.

**BACKGROUND**

**A.    Plaintiff's Application for Disability Benefits**

Plaintiff applied for disability insurance benefits under Title II of the Social Security Act (the "Act") and for supplemental security income under Title XVI of the Act on May 13, 2020 and May 15, 2020, respectively. *See* Certified Administrative Record ("AR") [Dkt. No. 8] at 274, 281, 323.[1]  He alleged due to chronic pain, arthritis in multiple joints, fibromyalgia, back pain, plantar fasciitis and sleep apnea, he had been unable to work since September 25, 2019. *Id.* at 77-78, 323, 345-54. After his application was denied at the initial stage and upon reconsideration, Plaintiff requested a hearing before an administrative law judge ("ALJ"), which took place on March 11, 2022 before ALJ Kevin Messer. *Id.* at 48-76.  Plaintiff appeared with counsel and gave testimony. *Id.*  The ALJ issued an unfavorable decision on July 21, 2022, having concluded Plaintiff "has not been under a disability, as defined in [the Act], from September 25, 2019, through the date of [the] decision." *Id.* at 27, 40.  On August 4, 2023, the Appeals Council denied review, and the ALJ's decision became final. *See id.* at 1-3.

**B.    Summary of the ALJ's Findings**

A person is considered "disabled" within the meaning of the Act if they suffer from a medically determinable physical or mental impairment which is expected to last at least a year and is of such severity that they cannot work, considering their age, education, and work experience. *See* 42 U.S.C. § 423(d).  The Administration employs a sequential five-step evaluation to make this determination.[2]

---

[1]    The Court uses the parties' pagination of the AR.  All other docket citations are to the CM/ECF page numbers.

[2]    The five-step sequential evaluation is the same for both disability insurance

23-cv-1611-W-DDL

The ALJ followed this five-step process in adjudicating Plaintiff's disability claim. *See generally* AR at 27-39. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since September 25, 2019, the alleged date of onset of his disability. *Id*. at 29. At step two, the ALJ found Plaintiff had the following severe impairments: degenerative disc disease of the cervical and lumbar spine, subacromial impingement of bilateral shoulders, left thumb carpometacarpal ("CMC") arthritis, carpal tunnel syndrome of the left wrist, osteoarthritis of bilateral knees, bilateral plantar fasciitis, and obstructive sleep apnea.[3] AR at 29. At step three, the ALJ found Plaintiff's impairments did not meet or medically equal a listed impairment. *Id*. at 31.

Proceeding to step four, the ALJ determined despite Plaintiff's impairments, he could:

---

benefits and supplemental security income. *See* 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. The ALJ must determine the following: at step one, whether the claimant is engaged in substantial gainful activity; at step two, whether the claimant suffers from a severe impairment within the meaning of the regulations; at step three (if the claimant suffers from a severe impairment), whether the impairment meets or is medically equal to one of the impairments identified in the Listing of Impairments; at step four, the claimant's residual functional capacity ("RFC") based on all impairments and whether, given the RFC, the claimant can perform his or her past relevant work; at step five, whether the claimant can make an adjustment to other work based on his or her RFC. If the claimant is found not disabled at any step, the analysis does not proceed to the next step.

[3] The ALJ found "no evidence" that Plaintiff's obesity, hypertension, fibromyalgia, tinnitus, vitreous floaters of bilateral eyes, and mild cognitive deficits "have caused more than a minimal impact on the [Plaintiff's] ability to perform work-related functions," and therefore deemed those impairments nonsevere. AR at 29-30. Likewise, the ALJ deemed Plaintiff's alleged neurocognitive disorder nonsevere, as it "[did] not cause more than a minimal limitation in [Plaintiff's] ability to perform basic mental work activities." *Id.* at 30. *Accord* 20 C.F.R. § 404.1522(a) ("An impairment or combination of impairments is not severe if it does not significantly limit [a claimant's] physical or mental ability to do basic work activities.")

23-cv-1611-W-DDL

perform light work[4] as defined in 20 CFR [§§] 404.1567(b) and 416.967(b) except he can occasionally climb ramps/stairs; never climb ladders/ropes/scaffolds; occasionally balance, stoop, kneel, crouch and crawl; frequently handle and finger with bilateral upper extremities; frequently overhead reach with the bilateral upper extremities[; and] must avoid concentrated exposure to extreme cold, and to vibration.

AR at 33.

In formulating this RFC, the ALJ considered Plaintiff's subjective testimony regarding his limitations. *Id.* at 33-36. The ALJ found although Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, Plaintiff's allegation that those symptoms "result in a disabling degree of limitation in the ability to perform any work requirements on a sustained basis" was "inconsistent with the administrative record . . .." *Id.* In support, the ALJ cited medical records demonstrating a normal range of motion in Plaintiff's spine, neck, hands and other joints, imaging studies with no acute findings, conservative treatments for Plaintiff's conditions, and Plaintiff's ability to tolerate daily activities of walking, driving, gardening, and performing household chores. *Id.* at 35-36. The ALJ found this evidence "support[ed] a residual functional capacity to sustain the performance of work that involves a light exertional level . . .." *Id.* at 35.

The ALJ also considered the opinion evidence and prior administrative medical findings in the record. AR at 36-38. Regarding Plaintiff's alleged physical impairments, the ALJ found persuasive the findings of state agency medical

---

[4]     "Light work" is defined as work that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds," and may require "a good deal of walking or standing, or . . . sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b). A person who is capable of light work is also considered capable of sedentary work, "unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." *Id.*

23-cv-1611-W-DDL

consultants C. Scott, Ph.D. and M. Mazuryk, M.D. regarding Plaintiff's physical limitations, which were consistent with light work.  *Id.* at 37.  The opinion of consulting examiner J. Tran, M.D., that Plaintiff could lift 50 pounds occasionally and 25 pounds frequently and had no postural or manipulative limitations, was only partially persuasive.  *Id.*  The ALJ found Dr. Tran's opinion, although consistent with her own findings, was not consistent with other objective medical findings.  *Id.* The opinion of Plaintiff's treating physician, A. Magnuson M.D., was not persuasive, because there was nothing in Dr. Magnuson's treatment notes to support the "extreme limitations" she opined were necessary, and such limitations were not supported by other medical evidence.  *Id*. at 38.

Regarding Plaintiff's alleged mental impairments, the ALJ found the opinion of state mental health expert S. Kaper, Ph.D., that Plaintiff had no more than mild limitations in the Paragraph B criteria persuasive based on the consistency of this opinion with the objective medical record.  *Id.* at 37.  The ALJ found the opinion of consultative examiner G. Nicholson, M.D. only partially persuasive, as it was consistent with findings from the examination but not consistent with other objective evidence in the record.  *Id*. at 37-38.

Having considered the record as described above, ALJ concluded "the residual functional capacity assessment is supported by the medical and non-medical evidence . . . and it contains appropriate limitations in physical functioning to account for the symptoms associated with" Plaintiff's impairments.  AR at 38. Based on the RFC and the testimony of the vocational expert, the ALJ further found at step four Plaintiff could not perform his past relevant work as a plumber.  *Id.*

At step five, the ALJ found Plaintiff "capable of making a successful adjustment to . . . work that exists in significant numbers in the national economy," based on the vocational expert's testimony regarding jobs which could be performed by someone with Plaintiff's RFC.  *Id.* at 39-40.

/ / /

23-cv-1611-W-DDL

Based on the foregoing five-step analysis, the ALJ concluded Plaintiff had not been under a disability within the meaning of the Act during the Relevant Period. *Id.* at 40.

**II.**

**<u>DISPUTED ISSUES</u>**

Plaintiff identifies five disputed issues on appeal, as follows:

1) Whether the ALJ provided a reviewable decision by failing to address the whole record;

2) Whether the ALJ addressed the combination of impairments in the RFC;

3) Whether the Commissioner provided a mental residual functional evacuation [*sic*] as required by SSR 85-16;

4) Whether the Commissioner met his burden of proof at Step Five; and

5) Whether the Commissioner gave clear and convincing reasons to find Mr. Gonzalez's "case" not "persuasive."

*See* Dkt. No. 11-1 at 10.

**III.**

**<u>STANDARD OF REVIEW</u>**

The Court's review of the Commissioner's final decision is "highly deferential." *Kitchen v. Kijakazi*, 82 F. 4th 732, 738 (9th Cir. 2023).[5] The Court "will disturb the denial of benefits only if the decision contains legal error or is not supported by substantial evidence." *Id.* "Substantial evidence is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and must be more than a mere scintilla, but may be less than a preponderance." *Id.* This Court must review the entire record and consider adverse as well as supporting evidence. *See Ahearn v. Saul*, 988 F.3d 1111, 1115

---

[5] All citations, internal quotation marks, and subsequent history are omitted, and emphasis is added, unless otherwise noted.

23-cv-1611-W-DDL

(9th Cir. 2021). The Court "may not reweigh the evidence or substitute [its] judgment for that of the ALJ." *Id.* Moreover, "[t]he ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Id.* If the evidence is susceptible of more than one rational interpretation, the ALJ's decision must be upheld. *See id.* at 1115-16. However, the Court cannot affirm "on a ground upon which [the ALJ] did not rely." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014). Where the ALJ commits legal error, the Court may affirm the decision if the error is harmless, meaning "it is inconsequential to the ultimate nondisability determination, or that, despite the legal error, the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 404.1502(a) (citing *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)).

**IV.**

**<u>DISCUSSION</u>**

**A. <u>Plaintiff Has Not Demonstrated Harmful Error</u>**

With the foregoing legal standards in mind, the Court addresses each of the disputed issues Plaintiff has identified.

*1. The ALJ's Consideration of the Record*

As a first charge of error, Plaintiff asserts "the ALJ's decision is based on limited records," and furthermore that "because the entire record" was not reviewed the ALJ's decision is "unreviewable." Dkt. No. 11-1 at 11. The Court disagrees.

To begin, Plaintiff has not supported his claim that the ALJ "did not review" numerous medical records, namely, exhibits 9F through 19F. *See id.* As the Commissioner correctly notes, this assertion is readily disproven by reference to the ALJ's opinion, which explicitly discusses one of the allegedly overlooked

exhibits.  *See* Dkt. No. 19 at 3 (citing AR at 38).  The index of records reviewed also includes exhibits 9F through 19F.  *See id.* at 2; AR at 42-47.

Moreover, to the extent Plaintiff posits that the three pieces of evidence (not including the one discussed by the ALJ) identified in his briefing were "ignore[d]" (Dkt. No. 21 at 4-5) because the ALJ did not explicitly discuss them, Plaintiff has not established the ALJ was required to do so.  The Ninth Circuit holds, to the contrary, that "in interpreting the evidence and developing the record, the ALJ does not need to discuss every piece of evidence."  *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003).  In other words, Plaintiff has conflated the requirement the ALJ "consider" all evidence relevant to a claim with a requirement that such evidence be exhaustively cataloged in the resulting disability determination.  The former exists; the latter does not.  *See* 20 C.F.R. § 416.920 ("We will ***consider*** all evidence in your case record when we make a determination or decision whether you are disabled.");[6] *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (noting the Commissioner "need not ***discuss*** all evidence presented" in the record).

It is true that the ALJ is required to state reasons for rejecting "significant or probative" evidence, unless such evidence is "cumulative" of evidence already addressed in the opinion.  *Dominguez v. Colvin*, 927 F. Supp. 2d 846, 862 (C.D. Cal. 2013) (citing *Vincent*).[7]  But, Plaintiff has not explained why the allegedly

---

[6]    Plaintiff cites 20 C.F.R. § 416.927(b) for the proposition that the ALJ must "address" all evidence in the record.  *See* Dkt. No. 11-1 at 10. This regulation – which, notably, requires the ALJ to *consider* certain evidence – governs the treatment of medical opinion testimony for claims filed before March 27, 2017, and is not applicable here.

[7]    Plaintiff disputes that *Vincent* controls, stating without further explanation that the case "refers to lay evidence before the regulation changed."  Dkt. No. 21 at 5. Plaintiff misreads *Vincent*.  Regardless, for the reasons discussed, the Court declines to find that the ALJ was required to discuss these records.

8

ignored evidence is significant or probative, and has failed to demonstrate the omission of express reference to it constitutes harmful error requiring reversal.

Regardless, the Court finds this evidence – specifically, a cardiologist's note "that exertion is a cardiac risk factor," Plaintiff's primary physician's referral for a cognitive evaluation, and the ensuing testing showing Plaintiff had "mild" cognitive deficits, *see* Dkt. No. 21 at 4 – is cumulative of the evidence specifically and thoroughly discussed by the ALJ in support of his determination that Plaintiff was not disabled. *See* AR at 30-31 (the ALJ's Paragraph B analysis, supported by multiple citations to the record); *id.* at 31 (finding Plaintiff's alleged rapid heartbeat was not a medically determinable impairment); *id.* at 36 (noting Plaintiff's ability to perform household chores and property maintenance despite complaints of shortness of breath and chest tightness); *id.* at 37 (describing state mental health expert's assessment and supporting mental status examinations); *id.* at 37-38 (describing consultative examiner's psychological assessment regarding Plaintiff's cognitive abilities). Thus, even if it was error for the ALJ not to discuss the cognitive referral and testing and the cardiologist's note, the record does not support a finding such error was harmful, where Plaintiff "has not set forth, and there is no evidence in the record, of any functional limitations as a result of [this evidence] that the ALJ failed to consider." *See Burch v. Barnhart*, 400 F.3d 676, 684 (9th Cir. 2005); *accord Howard*, 341 F.3d at 1013 ("The presence of contradictory reports does not preclude a finding that a claimant is not disabled.").

### 2. *The RFC and Plaintiff's Combined Impairments*

As a second charge of error, Plaintiff states the ALJ failed to incorporate the "totality of [Plaintiff's] limitations" in formulating the RFC. Dkt. No. 11-1 at 11. Plaintiff asserts the ALJ "omits any discussion" of the conditions and resulting limitations that were "part of the unreviewed record." *Id.*; *see also* Dkt. No. 21 at 6 (Plaintiff's similar argument on reply that "the ALJ did not address the combination of impairments in the RFC" because he did not "address[] the entire neurological

and physical evidence"). For the reasons discussed above, Plaintiff's contention the ALJ did not base his nondisability determination on the entire record is not persuasive. Nevertheless, the Court has examined the ALJ's determination of Plaintiff's RFC and finds no error.

A claimant's "residual functional capacity is the most [the claimant] can still do despite [his or her] limitations," and is assessed "based on all the relevant evidence in [the] record." 20 C.F.R. § 416.945(a). The ALJ's task is to "translate" the claimant's limitations into "concrete restrictions." *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008).

In formulating Plaintiff's RFC, the ALJ considered the objective medical evidence, the prior administrative findings and medical opinions, and Plaintiff's subjective testimony. *See generally* AR at 33-38. Based on this review of the record, the ALJ assessed Plaintiff could sustain work at the light exertional level, with the additional restrictions to avoid extreme cold and vibration. *Id.* at 35. The ALJ determined these combined limitations were necessary due to Plaintiff's "spinal issues, subacromial impingement of bilateral shoulders, left thumb CMC arthritis, carpal tunnel syndrome, osteoarthritis of bilateral knees, bilateral plantar fasciitis, and obstructive sleep apnea." *Id.* at 38. The ALJ also considered Plaintiff's nonsevere impairments (obesity, hypertension, fibromyalgia, tinnitus, vitreous floaters of bilateral eyes, mild cognitive deficits, and neurocognitive disorder) in formulating the RFC. *Id.* at 30. To the extent the ALJ found support in the record for limitations related to Plaintiff's impairments, severe and nonsevere, those limitations are reflected in the RFC. *Id.* The specific omissions alleged by Plaintiff do not warrant reversal.

a. *Long COVID*

First, Plaintiff contends the ALJ "failed to address long haul covid [*sic*]," stating the "condition" must be evaluated pursuant to a "directive" from the Commissioner. Dkt. No. 11-1 at 12. Even assuming the administration instructed

ALJs to evaluate COVID-associated symptoms, the Court is not persuaded the ALJ was required to assess COVID as a standalone condition, as opposed to any medically determinable impairment caused or exacerbated by the disease.[8] *See* Dkt. No. 11-1 (citing "directive" that the ALJ must consider "functional limitations arising out of any new MDIs caused by . . . or any MDI(s) that has worsened because of COVID-19").

Plaintiff did not allege "long haul covid" as a disabling impairment (*see* AR at 29-30, 78, 323, 345), but speculates his "memory loss, respiratory and cardiac impairment" are attributable to one or more COVID infections. *See* Dkt. No. 11-1 at 12; AR at 1005 (noting Plaintiff's report that he had COVID "1 year ago & possibly a few months ago but [he] was never tested"). The ALJ amply assessed each of these conditions and their impact, if any, on Plaintiff's ability to perform work-related functions.

For example, the ALJ conducted a thorough Paragraph B analysis regarding Plaintiff's alleged "neurocognitive disorder, ultimately determining based on his

---

[8] The Court was unable to locate the cited directive. The URL in Plaintiff's opening brief links to a document titled "*Long COVID: A Guide for Health Professionals on Providing Medical Evidence for Social Security Disability Claims.*" As the title suggests, it is addressed to medical providers, and was issued in June 2023, nearly a year after the ALJ issued the disability opinion at issue. This document does not contain the language block-quoted on page 12 of Plaintiff's opening brief, but it does contain reference to a document titled "SSA Emergency Message *EM-21032 REV, Evaluating cases with Coronavirus Disease 2019 (COVID-19).*" The link to this document is no longer active. Through its own research, the Court located an article describing the emergency message. *See* https://soarworks.samhsa.gov/article/ssa-issues-an-emergency-message-for-evaluating-covid (May 2021) (last visited July 15, 2024). According to the article, disability evaluators were to consider whether any COVID-related impairment was "of 'listing level' severity," and, if not, to "assess [the claimant's] residual functional capacity (RFC) to determine whether they have any functional limitations caused by symptoms of COVID-19 or any resulting MDI(s)." *See id.*

review of the evidence that despite Plaintiff's claimed difficulty remembering things, he had "no more than a mild limitation" in this area. AR at 30. The ALJ likewise rejected Plaintiff's claim that his generalized cognitive difficulties were disabling, citing the consultative examiner's evaluation. *Id.* at 37. The ALJ also determined Plaintiff's alleged "rapid heartbeat and shortness of breath" were not medically determinable impairments, citing a lack of objective testing leading to a diagnosis for either condition. *Id.* at 31. The ALJ did not find persuasive allegations that Plaintiff's respiratory symptoms were disabling, citing multiple physical examinations that were negative for cough, shortness of breath, chest tightness or wheezing, and Plaintiff's ability to participate in daily activities requiring physical exertion. *Id.* at 36. Plaintiff's only medically determinable respiratory condition – sleep apnea – did not require work-related limitations beyond those stated in the RFC. *Id.* at 33.

The Court finds Plaintiff has not demonstrated harmful error on the basis of the alleged failure to address long COVID.

b. *Joint Damage*

Second, Plaintiff complains the ALJ failed to address imaging and other objective evidence "documenting joint damage in the shoulder, back, hand and feet." Dkt. No. 11-1 at 13. This contention is demonstrably incorrect. The ALJ extensively discussed objective findings from various imaging studies when evaluating Plaintiff's subjective symptom testimony. *See* AR at 34-35. The ALJ noted findings of degenerative conditions in the bilateral hands and wrists, left thumb, lumbar and cervical spine, right hip, right and left shoulders, both knees, and left foot. *See id.* (citing AR at 428, 443, 480, 493, 556-57, 559, 566, 571-72, 626-27). However, the ALJ also discussed notes from several physical examinations indicating Plaintiff's range of motion was full or nearly full, he had a normal gait and walked without assistance, he had no acute deformities or fractures, and testing demonstrated his physical functions were not severely

23-cv-1611-W-DDL

limited, despite his degenerative conditions.  *See id.* at 35-36.  The ALJ took all of these findings into consideration in formulating Plaintiff's RFC.  *See id.* at 38.  The Court finds Plaintiff has not demonstrated harmful error on the basis of the alleged failure to address Plaintiff's joint damage.

### c. *Fibromyalgia*

Third, Plaintiff complains the ALJ "ignore[d]" his fibromyalgia by deeming the condition non-severe.  Dkt. No. 11-1 at 14.  Plaintiff argues the ALJ should have included the "pain of fibromyalgia" as a limitation and the "impact" of his "on going [*sic*] pain" must be addressed in the RFC.  *Id.*  Again, this contention is disproven upon review of the decision.  The ALJ discussed Plaintiff's allegation that "he suffers from inflammation throughout his body that caused numbing and pain and limited mobility" at considerable length.  *See* AR at 34-38.  The ALJ considered this allegation in relation to the evidence, including objective findings and Plaintiff's testimony about his daily activities.  *See id.*  In doing so, the ALJ appropriately considered the longitudinal record to determine both the existence and severity of Plaintiff's pain (whether attributable to fibromyalgia or another condition).  *See* SSR 12-2p (instructing the ALJ to consider the "longitudinal records" to "establish[] both the existence **and severity** of" fibromyalgia).  Ultimately, the ALJ determined Plaintiff's pain did not prevent him from working altogether but incorporated pain- and mobility-related limitations to the extent those limitations were supported by the record in formulating the RFC.  *See* AR at 35.  The Court finds Plaintiff has not demonstrated harmful error on the basis of the alleged failure to address fibromyalgia.

### d. *Heart condition*

Fourth, Plaintiff asserts the ALJ did not address his "heart condition."  Dkt. No. 11-1 at 14.  Plaintiff states his "heart condition" was "documented" by Dr. R. Ahmed, a cardiologist, who noted "[Plaintiff's] heart accelerates to 110 with / / /

13

nausea."[9] *Id.*   But, the ALJ already determined that Plaintiff's alleged "rapid heartbeat" was not a medically determinable impairment because there was no objective testing leading to a diagnosis for this symptom.  AR at 31; *see also* 20 C.F.R. § 404.1521 (a medically determinable impairment "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques").  Plaintiff does not cite, and the Court did not locate, any evidence in the record to the contrary. The ALJ is only required to consider medically determinable impairments when formulating the RFC.  *See* 20 C.F.R. § 404.1545(a)(2).  The Court finds Plaintiff has not demonstrated harmful error on the basis of the alleged failure to address his "heart condition."

e.   *Conclusion regarding RFC*

For the foregoing reasons and on the record before it, the Court concludes the ALJ assessed Plaintiff's RFC as required by the regulations, appropriately considering all the relevant evidence as reflected by his findings as to the evidence he found persuasive and that which he found not credible.  Although Plaintiff cites evidence that could support a more restrictive RFC, it is not this Court's role to "reweigh the evidence or substitute [its] judgment for that of the ALJ."  *Ahearn*, 988 F.3d 1115; *see also Ferguson v. O'Malley*, 95 F.4th 1194, 1199 (9th Cir. 2024) ("If the evidence can reasonably support either affirming or reversing a decision, we may not substitute our judgment for that of the ALJ.").

3. *Mental Residual Functional Capacity*

As a third charge of error, Plaintiff asserts the ALJ did not provide a mental residual functional capacity evaluation, as required by Social Security Ruling

---

[9]   Dr. Ahmed's note dated January 7, 2022, documents Plaintiff's subjective report of symptoms; his  physical examination during that visit was normal.  *See* AR at 1019-22.

23-cv-1611-W-DDL

("SSR") 85-16.[10]  Dkt. No. 11-1 at 10.  Despite identifying this error, however, Plaintiff did not brief the issue in his opening brief (or, for that matter, in his reply brief).  *See generally* Dkt. No. 11-1.  The Court accordingly finds Plaintiff failed to meet his burden of demonstrating reversible error related to SSR 85-16.  *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (declining to address issue that claimant-appellant "failed to argue . . .  with any specificity"); *see also Kim v. Kang*, 154 F.3d 996, 1000 (9th Cir. 1998) (noting a reviewing court "will not ordinarily consider matters on appeal that are not specifically and distinctly argued in appellant's opening brief").

### 4.  *Step Five Determination*

As a fourth charge of error, Plaintiff asserts the ALJ did not meet his burden at step five of the sequential analysis to demonstrate that other jobs that exist in the national economy that Plaintiff could perform, given his RFC as determined by the ALJ.  Dkt. No. 11-1 at 15-17.  Specifically, Plaintiff contends the ALJ's determination that Plaintiff could work jobs that "require[] frequent fingering" is in conflict with evidence that Plaintiff "has difficulty opening a jar or using a knife," and more generally that the ALJ's determination that Plaintiff is capable of the full range of light work conflicts with evidence that Plaintiff "cannot stand."  *Id.* at 16; *see also* Dkt. No. 21 at 7 (Plaintiff's similar argument on reply that "[t]he ALJ did not resolve the conflict" between Plaintiff's "limited ability to grasp" and the ALJ's determination he could perform jobs requiring handling and fingering).  Plaintiff states, "because the ALJ did not use the medical record in its entirety the ALJ's decision conflicts with the evidence."  Dkt. No. 11-1 at 15.

---

[10]    SSRs are the Administration's "precedent final opinions and orders and statements of policy and interpretations," and are binding on the ALJ although they "do not carry the force of law." *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009).

23-cv-1611-W-DDL

For the reasons explained above, the Court is not persuaded the ALJ improperly disregarded medical evidence and rejects Plaintiff's argument regarding step five to the extent it is based on the assertion that "the record was not reviewed" or that the ALJ "omitted" records from his review. *Id.* at 16.

Plaintiff's argument regarding the ALJ's step-five determination is otherwise a restatement of his argument that the ALJ did not properly account for all of his impairments in formulating the RFC. For reasons discussed above, and elsewhere in this opinion, the Court finds no error in the ALJ's determination of Plaintiff's RFC. The ALJ's subsequent determination that Plaintiff could adjust to other work was based on a legally sound RFC, appropriately informed by the testimony of a vocational expert. *See Ford*, 950 F.3d at 1149 (noting that the Commissioner bears the burden at step five "to prove that the claimant can perform a significant number of other jobs in the national economy," which it may meet by relying on the testimony of a vocational expert). The Court concludes the Commissioner met his burden at step five and finds Plaintiff has failed to demonstrate harmful error on this basis.

### 5. *The ALJ's Rejection of Plaintiff's Subjective Testimony*

As a fifth charge of error, Plaintiff asserts the ALJ failed to provide clear and convincing reasons to reject his subjective testimony. Plaintiff's argument on this point in his opening brief is as follows:

> [Plaintiff] explained that he has severe pain in his joints, shoulders, legs and hands. This condition was further exasperated [*sic*] by his cognitive loss and heart condition. When the ALJ failed to address the whole record it was impossible to find [Plaintiff's] statements were not convincing. As such, the ALJ did not provide specific evidence to discredit [Plaintiff]. Therefore, the ALJ's decision is not supported by substantial evidence.

Dkt. No. 11-1 at 17. The Court again disagrees with the premise that the ALJ did not "address the whole record." *Id.* To the extent Plaintiff's argument regarding the ALJ's rejection of his subjective testimony is based on this faulty premise, it

16

fails for the same reasons.  Nevertheless, the Court has examined whether the ALJ erred in rejecting Plaintiff's subjective symptom testimony.

The ALJ "is not required to believe every allegation of disabling pain." *Molina*, 674 F.3d at 1112.  However, in the absence of evidence of malingering, an ALJ must offer "specific, clear and convincing reasons" for rejecting a claimant's subjective testimony regarding the limitations caused by his impairment.  *See Ferguson*, 95 F.4th at 1199; *see also Smartt v. Kijakazi*, 53 F.4th 489, 497 (9th Cir. 2022) ("an adverse credibility finding must be based on clear and convincing reasons").

After reviewing the evidence in the record, the ALJ concluded Plaintiff's medically determinable impairments could reasonably be expected to cause many of his alleged physical symptoms.  AR at 33.  Based on his review of the record, however, the ALJ found Plaintiff's allegations that "his symptoms result in a disabling degree of limitation in the ability to perform any work requirements on a sustained basis" was "inconsistent with the evidence."  *Id.* at 34.

Regarding Plaintiff's allegations of disabling pain and limited mobility, the ALJ found these undermined by the lack of acute findings on several imaging studies, examination results showing largely normal range of motion with only mild tenderness; and the relatively conservative nature of the treatments for Plaintiff's musculoskeletal conditions.  *See* AR at 35-36.  Plaintiff's alleged mental limitations were in conflict with objective findings on mental status examinations demonstrating normal attention, thought content and judgment, the lack of ongoing psychological treatments, the state mental health expert's assessment, and with the findings from the consultative examiner's psychological evaluation.  *Id.* at 37-38.  The Court finds these are sufficiently clear and convincing reasons for

/ / /

/ / /

/ / /

23-cv-1611-W-DDL

discounting Plaintiff's subjective testimony under prevailing Ninth Circuit standards.[11]

The ALJ also found Plaintiff's daily activities undermined his allegations of disability, noting that despite Plaintiff's complaints of "difficulty" standing, walking, moving, exerting himself, reaching, grasping, breathing and sleeping, he was able to "handle household chores," care for his children and animals, and take walks with his family. *Id.* at 35-36. For each symptom or group of symptoms, the ALJ described how Plaintiff's activities were in conflict with his alleged limitations. For example, undermining Plaintiff's alleged difficulty reaching and manipulating objects were his statements that he was able to gather and wash eggs, prepare meals, and grip a steering wheel. *See id.* In contrast to Plaintiff's alleged difficulty standing and walking, the ALJ cited Plaintiff's testimony that he was able to feed his livestock, take walks with his family, and trim weeds. *Id.* at 35. Plaintiff's reported ability to pick up animal waste, maintain his garden, position himself in a car, shop for groceries and other supplies, and drive himself to appointments and errands likewise discredited his alleged inability to engage in physical exertion due to an accelerated heartbeat and difficulty breathing. *Id.* at 35-36. Similarly, Plaintiff's ability to participate in church and Bible study, tend to his garden without assistance, appear for scheduled medical appointments, and manage his personal care undercut his allegations regarding diminished cognitive abilities. *Id.* at 30-31,

---

[11] *See, e.g., Smartt*, 53 F.4th at 498 (noting that "[w]hen objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony") (collecting cases) (emphasis in original); *Molina*, 674 F.3d at 1114 (finding the ALJ may reasonably conclude that "the level or frequency of treatment" is "inconsistent with the level of complaints"); *Carmickle*, 533 F.3d at 1161 ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."); *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007); (upholding ALJ's finding that subjective complaints of pain were contradicted by normal examination findings).

37.   The ALJ may properly factor a claimant's daily activities into the credibility assessment where the nature and level of activity is inconsistent with an asserted inability to perform work-related activities.   *See Ferguson*, 95 F.4th at 1203. Therefore, the ALJ's citation to Plaintiff's daily activities was a further and independently sufficient reason for discounting Plaintiff's subjective symptom testimony.  *See Smartt*, 53 F. 4th at 497 (finding the ALJ "properly discounted" the claimant's testimony where she "acknowledged that she routinely performed several daily activities, notwithstanding her caveats").

Based on the foregoing analysis, the Court finds the ALJ provided "specific, clear and convincing" reasons for his credibility determination, by "enumerat[ing] the objective evidence that undermine[d] [Plaintiff's] testimony," *Kitchen*, 82 F.4th at 739, and "explain[ing] why the medical evidence is *inconsistent* with the claimant's subjective testimony."[12]   *Ferguson*, 95 F.4th at 1200 (emphasis in original).  The Court is therefore persuaded that the ALJ did not "arbitrarily discredit [the] claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). In other words, the ALJ "show[ed] his work."  *Smartt*, 53 F.4th at 499 ("the 'clear and convincing' standard . . . requires an ALJ to show his work").  The Court finds the ALJ's credibility determination is adequately supported, and declines to "engage in second-guessing" that determination. *See Thomas*, 278 F.3d at 959; *see also Brown-Hunter*, 806 F.3d at 494 ("[T]he credibility determination is exclusively the ALJ's to make, and [the Court's] only to review.").

**B. Substantial Evidence Supports the ALJ's Decision**

Having found no legal error in the ALJ's treatment of the record or formulation of Plaintiff's RFC, the Court turns to the question of whether the RFC, and the

---

[12]   Plaintiff's belated argument, made on reply, that the ALJ failed to articulate a "reasonable relationship between daily living and competitive work in the national economy" is unpersuasive for the same reasons.  *See* Dkt. No. 21 at 6.

ALJ's conclusion based on the RFC that Plaintiff was not disabled, is supported by substantial evidence. The Court has independently "assess[ed] the entire record, weighing the evidence both supporting and detracting from the [ALJ's] conclusion." *See Ahearn*, 988 F.3d at 1115. Based on this review, the Court finds substantial evidence supports the ALJ's decision. A summary of that evidence follows.

The record confirms Plaintiff suffers from arthritis in his left thumb, shoulders, knees, and left foot; mild degenerative disc disease in his cervical and lumbar spine; and carpal tunnel syndrome. *See, e.g.,* AR at 403-05, 421-24, 480, 483, 643, 698-99, 948-49, 952-57. A 2019 MRI showed impingement syndrome in both shoulders. *See id.* at 531-32, 588-90. Plaintiff also has flat feet, resulting in "poor alignment" of his knees. *See id.* at 952-57. The record reflects frequent complaints of pain associated with these musculoskeletal conditions. *See, e.g.*, *id.* at 457-58, 505-07, 517-18, 535, 542, 621, 659-60. Recommended treatments included oral medications, lidocaine injections, physical and occupational therapy, heat packs, orthotics and braces, and regular exercise. *See id.* at 421-24, 525-28, 952-57. Surgical intervention was discussed but not pursued, either at Plaintiff's election or because the treating provider recommended more conservative treatments. *See id.* at 505-07, 538-39, 941, 952-57.

Plaintiff reported in his Adult Function Report that his daily activities included caring for his children and animals, and house and yard work to include feeding animals, watering and tending his garden, milking goats, and gathering and washing eggs. *See* AR at 345-54. Plaintiff testified at the hearing he could drive, manage his appointments, use the bathroom and dress himself without assistance, prepare small meals and homeschool his daughter. *Id*. at 62-63. Although he testified to "fall[ing] behind" on some of the upkeep on his property, he nevertheless confirmed he could still garden, feed the chickens and other animals, and use a weedeater for "a couple hours." *Id*. at 64-68. During the orthopedic examination conducted in December 2020, Plaintiff was able to walk with a normal

23-cv-1611-W-DDL

gait and without assistance, and to don and doff his socks and shoes without difficulty. *See id.* at 644-650. The examiner noted Plaintiff demonstrated normal strength and sensation, "no significant loss" of range of motion, and did not have all the tender points of fibromyalgia. *Id.*

Plaintiff was also diagnosed with severe obstructive sleep apnea as early as 2017. *See id.* at 982, 987. However, chest x-rays taken in 2020 and 2021 were "completely normal" and demonstrated no acute or active cardiopulmonary disease. *See id.* at 662, 723-24. An echocardiogram performed in February 2022 was normal. AR at 1011. Plaintiff was prescribed a CPAP machine to treat his sleep apnea, but his compliance was poor. *See id.* at 967-968.

Notes from the mental status examination conducted in September 2020 reflect Plaintiff was "coherent and organized," of average intelligence, and presented with grossly intact insight and judgment and no significant deficiencies in memory or concentration. *See id.* at 635-640. Examination findings from a February 2022 neurology consult show Plaintiff had no aphasia or anomia, was able to give a clear and concise history, and had a grossly intact memory. *See id*. at 1008-1010. The neurologist referred Plaintiff to a speech therapist, who performed a cognitive evaluation in March 2022. *Id*. at 1002-10. Plaintiff scored overall "low average," with mild impairments in memory and attention, but reported he had no difficulty completing household and childcare responsibilities. *Id*. Plaintiff also reported he was taking online classes and "getting good grades" despite his alleged fatigue and memory deficits. *Id*. Plaintiff's symptoms also reportedly worsened "in the latter part of the day when [Plaintiff] is more fatigued." *Id*. The speech therapist surmised Plaintiff's mild cognitive impairment was "impacted by fatigue and cognitive load," including his academic and childcare responsibilities, which could be managed by more frequent "brain break[s]." *Id*.

The Court finds the foregoing is relevant and substantial evidence adequate to support the ALJ's RFC, and the subsequent determination based on Plaintiff's

23-cv-1611-W-DDL

RFC that he was not disabled. Accordingly, the ALJ's decision will not be disturbed. *See Ahearn*, 988 F.3d at 1115 ("If substantial evidence in the record supports the ALJ's decision we must defer to the ALJ."); *see also* 42 U.S.C.A. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive").

## V.

## CONCLUSION

For the foregoing reasons, the Court concludes the ALJ followed the law and that his determination that Plaintiff is not disabled is supported by substantial evidence in the record. The undersigned accordingly **RECOMMENDS** that the District Court issue an order: (1) approving and adopting this Report and Recommendation in its entirety; (2) denying Plaintiff's request for remand for an award of benefits; (3) affirming the decision of the Commissioner; and (4) directing that judgment be entered in the Commissioner's favor.

**IT IS HEREBY ORDERED** that any objections to this Report and Recommendation must be filed by not later than **August 1, 2024**. Any response to a party's objections must be filed by not later than **August 8, 2024**. Failure to timely file objections may waive the right to raise those objections on appeal. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).

**IT IS SO ORDERED.**

Dated: July 17, 2024

Hon. David D. Leshner
United States Magistrate Judge

22

23-cv-1611-W-DDL